IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

DEMETRIUS A WALLACE,

      Petitioner,

v.                                      CASE NO. 1:10-cv-200-MP-GRJ

SECRETARY, DEPT.
OF CORRECTIONS,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner initiated this case by filing a *pro se* Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Doc. 1. The Respondent filed a response and an appendix of exhibits with relevant portions of the state-court record (hereafter "Exh."). Docs. 30, 32. Petitioner filed a reply. Doc. 33. Upon due consideration of the Petition, the Response, the Reply, and the state-court record, the undersigned recommends that the Petition be denied.[1]

## Summary of State Court Proceedings

Following a jury trial, Petitioner was found guilty of possession of cocaine, in contravention of Fla. Stat. § 893.13(6)(a), and sale or delivery of cocaine, in contravention of Fla. Stat. § 893.13(1)(a)(1). Exh. 1. He was sentenced to concurrent five and 15 year terms of imprisonment.

---

[1]Because the Court may resolve the Petition on the basis of the record, the Court has determined that an evidentiary hearing is not warranted. *See* Rule 8, Rules Governing Habeas Corpus Petitions Under Section 2254.

The evidence adduced at trial may be summarized as follows. Levy County Sheriff's Office Investigator Burt Miller testified that a paid confidential informant, Elizabeth Robertson, assisted in an investigation of Petitioner. Miller followed Robertson to Petitioner's home, where Robertson gave Petitioner one hundred dollars and then drove around the block. She returned to Petitioner's house, and he gave her drugs. Robertson then met with Miller and gave him the drugs, which field tested positive for crack cocaine. On cross-examination, Miller conceded that Robertson stopped to talk to several individuals between the time that she gave Petitioner the money and the time she returned to pick up the cocaine. Miller testified that Robertson had assisted in a high number of cases because she had good contacts.

Robertson testified that she agreed to assist Miller after her arrest on drug charges, and that she sometimes made more than one hundred dollars a day working for Miller. Robertson testified that she purchased cocaine from Petitioner on April 18, 2008, and she identified Petitioner in court. She had known Petitioner prior to the transaction. She admitted that several people approached her car before she received the cocaine from Petitioner, and that she received cigarettes from them and shook hands with a person, but she testified that none of the persons were drug dealers and one person was looking for cocaine.

Robertson was equipped with video recording equipment that recorded the transaction, and the video was played for the jury. Defense counsel cross-examined Robertson regarding the fact that the video did not actually show drugs changing hands. He questioned whether Petitioner had any reason to be suspicious of Robertson, and Robertson stated that Petitioner had been suspicious of her after her

arrest.  She also stated that she had purchased drugs from Petitioner on two prior

occasions.  Defense counsel objected and moved for a mistrial, arguing that he had

been attempting to establish that Petitioner would not have sold drugs to someone of

whom he was suspicious.  The court found that counsel had opened the door to the

testimony and denied the motion.   Counsel did not request a curative instruction.

In closing argument, defense counsel argued that no exchange of drugs could

be seen on the video, and that Robertson had hand-to-hand contact with others prior to

encountering Petitioner.  Counsel challenged Robertson's credibility and motive in

assisting law enforcement.  Counsel pointed out that there was no evidence that

Petitioner had ever previously sold drugs to Robertson, and suggested that she made

up that testimony.  The prosecutor argued that Petitioner had been targeted by the

investigation because Robertson had previously bought drugs from him.  Exh. 2.

After sentencing, and while his case was pending on appeal, Petitioner filed a

motion in the trial court to correct sentence pursuant to Florida Rule of Criminal

Procedure 3.800(b)(2), arguing that the sentences violated due process insofar as they

exceed the maximum sentence that may be imposed for the commission of strict

liability offenses.  Exh. 4.   Petitioner asserted on appeal, *inter alia*, that the Florida

statutes proscribing possession of cocaine and sale or delivery of cocaine are facially

unconstitutional insofar as they are strict liability offenses classified as felonies.  Exh. 7.

Petitioner's conviction and sentences were affirmed *per curiam* without opinion.  Exh. 7.

 There were no further postconviction proceedings.

The instant Petition followed.  Respondent concedes that the Petition is timely.

Doc. 30.   Petitioner contends that he is entitled to habeas relief because: (1) the trial

court erred in denying his motion for mistrial; (2) the Florida controlled-substance statutes under which he was convicted are strict liability crimes and therefore unconstitutional; (3) & (4) his sentences are unconstitutional because the statutes are unconstitutional; and (5) his convictions violate double jeopardy.  Doc. 1.[2]

### Section 2254 Standard of Review

Under 28 U.S.C. § 2254(d)(2), a federal court may not grant a state prisoner's application for a writ of habeas corpus based on a claim already adjudicated on the merits in state court unless that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Under § 2254(e)(1), the petitioner must advance clear and convincing evidence that the state court's factual determination was "objectively unreasonable" to rebut the presumption that the determination was correct. *Gill v. Mecusker*, 633 F.3d 1272, 1287 (11th Cir.2011); see § 2254(e) (1).

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). "[C]learly established Federal law, as determined by the Supreme Court of the United States," refers only to holdings (rather than *dicta*) of the Supreme Court, but decisions of lower federal courts may be considered to the extent that they demonstrate how those courts

---

[2]Petitioner's claims are numbered differently in his Petition than in his attached memorandum.  The Court will address the claims in the order presented in the memorandum.

applied Supreme Court holdings. *Hawkins v. Alabama,* 318 F.3d 1302, 1309 (11th Cir. 2003) (citations omitted) ("The decisions of other federal circuit courts (and our decisions for that matter) are helpful to the AEDPA inquiry only to the extent that the decisions demonstrate that the Supreme Court's pre-existing, clearly established law compelled the circuit courts (and by implication would compel a state court) to decide in a definite way the case before them."). *See also Carey v. Musladin,* 549 U.S. 70, 74-77 (2006) (§ 2254 refers to holdings, rather than *dicta,* of the Supreme Court, collecting circuit cases "[r]eflecting the lack of guidance from this Court," on the issue).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meanings. *Williams v. Taylor,* 529 U.S. 362, 404-406 (2000); *Bell v. Cone,* 535 U.S. 685, 694 (2002) (citing *Williams* ). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams,* 529 U.S. at 412-13. "Avoiding these pitfalls [described in *Williams v. Taylor* ] does not require citation of our cases-indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3, 8  (2002) (emphasis in original).  Further, "whether a state court's decision was unreasonable must be assessed in light of the record the court had before it." *Holland v. Jackson,* 542 U.S. 649, 652  (2004).

In *Gill v. Mecusker*, 633 F.3d 1272 (11th Cir. 2011), the Eleventh Circuit clarified how the federal habeas court should address the "unreasonable application of law" and the "unreasonable determination of facts" tests. The court acknowledged the well-settled principle that summary affirmances, such as the Florida First District Court of Appeal's in this case, are presumed adjudicated on the merits and warrant deference. *Id*. at 1288 (citing *Harrington v. Richter*, ___ U.S. ___, 131 S.Ct. 770, 784–85 (2011), and *Wright v. Sec'y for the Dep't of Corr.*, 278 F.3d 1245, 1254 (11th Cir.2002)). "A judicial decision and a judicial opinion are not the same thing," and the Supreme Court has confirmed that determining whether the state court unreasonably applied the law or unreasonably determined the facts requires only a decision, not an opinion. *Id*. at 1291 (citing *Harrington*, 131 S.Ct. at 784). Yet, the Supreme Court has never squarely addressed whether under the "unreasonable application" test a federal habeas court "looks exclusively to the objective reasonableness of the state court's ultimate conclusion or must also consider the method by which the state court arrives at its conclusion." *Id*. at 1289 (quoting *Neal v. Puckett*, 286 F.3d 230, 244–45 (5th Cir.2002) (summarizing the emerging circuit split)). The Eleventh Circuit concluded that district courts must apply the plain language of § 2254(d) and answer the "precise question" raised in a claim based on the state court's ultimate legal conclusion, and should not "evaluate or rely upon the correctness of the state court's process of reasoning." *Id*. at 1291. In short, the court stated, "the statutory language focuses on the result, not on the reasoning that led to the result." *Id*.

In light of *Gill,* the "unreasonable determination of facts" standard plays a limited role in habeas review because the district court considers the reasonableness of the

trial court's fact finding only to the extent that the state court's ultimate conclusion relied on it. *Id*. at 1292. A federal habeas court can consider the full record before it to answer "the only question that matters[:]" whether the state court's decision was objectively unreasonable.  *Gill*, 133 F.3d at 1290.

**Discussion**

### *Claim 1: Denial of motion for mistrial*

Petitioner contends that the trial court should have granted the motion for a mistrial because the confidential informant testified that Petitioner had committed collateral crimes.  Respond contends that Petitioner failed to exhaust this issue in the state court because he did not raise it as a federal constitutional claim, and that in any event he is not entitled to relief on the merits.

Before bringing a habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state post-conviction motion.  28 U.S.C. § 2254(b)(1), (c).  Exhaustion requires that prisoners give the state courts a "full and fair opportunity" to resolve all federal constitutional claims by "invoking one complete round of the State's established appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  To properly exhaust a federal claim, a petitioner must "fairly present" his federal claim in each appropriate state court, thereby affording the state courts a meaningful opportunity to "pass upon and correct alleged violations of its prisoners' federal rights."  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quotation omitted).   A petitioner must "do more than scatter some makeshift needles in the haystack of the state court record"; a reasonable reader should be able to understand the factual and legal bases for the

federal claim. *McNair v. Campbell*, 416 F.3d 1291, 1297 (11th Cir.2005) (quotations and citations omitted). A petitioner may raise a federal claim in state court "by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such claim on federal grounds, or by simply labeling the claim 'federal.' " *Baldwin*, 541 U.S. at 32.

In this case, the record reflects that Petitioner argued on appeal that the trial court abused its discretion under Florida law in denying the motion, but did not assert the claim as a federal constitutional issue. *See* Exh. 5. Thus, the undersigned agrees that the claim is unexhausted. Petitioner does not argue that he can show any cause or prejudice sufficient to overcome the procedural default.

Even if the claim was not procedurally defaulted, Petitioner has failed to show that the claim has any merit as a federal habeas corpus claim.[3] Federal habeas courts do not sit to review State evidentiary rulings unless the alleged error is of such a magnitude as to render the state defendant's trial fundamentally unfair. *See Estelle v. McGuire*, 502 U.S. 62, 71 (1991); *Knight v. Singletary*, 50 F.3d 1539, 1546 (11th Cir.1995). The State court on direct review implicitly found no reversible error under Florida law. It is a "fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters." *Herring v. Sec'y, Dep't of Corr*., 397 F.3d 1338, 1355 (11th Cir.2005) (internal quotation omitted). Further, the record does not reflect that the denial of a mistrial in this case amounted to error of such a magnitude as to render the state defendant's trial

---

[3]Pursuant to 28 U.S.C § 2254(b)(2), a habeas petition may be denied on the merits, notwithstanding Petitioner's failure to exhaust state court remedies.

fundamentally unfair.  The record supports the trial court's conclusion that counsel opened the door to the collateral crimes evidence, albeit inadvertently.  Counsel argued to the jury that the State had presented no evidence of any such prior drug sales, and that Robertson might be highly motivated to fabricate such information in view of her service as a paid informant.

On this record, Petitioner has failed to show that the state court's rejection of this claim presents any basis for federal habeas relief.

### Claims 2, 3 & 4: Constitutionality of Florida statute and felony sentences

Petitioner's jury instructions required the jury to find that Petitioner had knowledge of the presence of the substance that he possessed and sold or delivered, but did not require the jury to find that Petitioner had knowledge of the illicit nature of the substance.  Exh. 3 at 290-92.  Petitioner's second, third, and fourth claims all depend upon his assertion that the Florida controlled-substance statutes are unconstitutional because they impose strict liability by eliminating knowledge of the illicit nature of the substance as an element of the offense.  These claims are foreclosed by recent Circuit precedent.  *See Shelton v. Sec'y, Dep't of Corr.*, 691 F.3d 1348 (11th Cir. 2012).

Following Florida Supreme Court cases holding that the State was required to prove *mens rea* in controlled-substance cases, and that the requisite *mens rea* includes both knowledge of the presence of the controlled substance as well as knowledge of its illicit nature, the Florida legislature enacted Fla. Stat. § 893.101, amending the Drug Abuse Prevention and Control Act.  The amendment expressly provided that knowledge of the illicit nature of the controlled substance was not an element of the offense, and

created an affirmative defense of lack of knowledge of the illicit nature of the substance. The statute did not eliminate the element of knowledge of the presence of the substance. "In short, the amendment did not completely eliminate *mens rea* for Florida drug crimes: it converted one aspect of *mens rea* from an element of the crime into an affirmative defense." *See Shelton*, 691 F.3d at 1350-51.

As the Eleventh Circuit explained, the Florida Supreme Court upheld the constitutionality of the amendment in *State v. Adkins*, ___ So.3d ___, 2012 WL 2848903 (Fla. July 12, 2012). In *Adkins*, the court examined the history of criminal statutes that omitted a scienter requirement and were nonetheless constitutional as compared to those statutes where the lack of scienter rendered them unconstitutional. The court explained that § 893.101 fell within the former because 1) it punished an affirmative act—possessing or delivering controlled substances—rather than merely a passive activity, such as simply being a felon present in a city more than five days; and 2) the provision did not threaten to chill otherwise protected activities.

In *Shelton*, the Eleventh Circuit reviewed habeas claims in which the Petitioner challenged the constitutionality of Florida's strict liability drug statutes. The Court held that *Adkins* was not an unreasonable application of federal law. The district court in *Shelton* had determined that Fla. Stat. § 893.101 was facially unconstitutional because (1) its felony penalties are too harsh to allow omission of a *mens rea* requirement; (2) violations lead to substantial social stigma and so *mens rea* is required; and (3) it reaches inherently innocent conduct without a *mens rea* component. On appeal, the Eleventh Circuit found that the district court had failed to give the proper deference under the AEDPA to the state courts' adjudication of the issue. Specifically, the

Eleventh Circuit held that the Florida Supreme Court's adjudication of the facial

constitutionality of § 893.101 on the merits in *Adkins* was not "contrary to, or involved

an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court." *Shelton*, 691 F.3d at 1355.

The decision in *Shelton* is binding upon this Court. Pursuant to *Shelton*, the

state courts' rejection of Petitioner's claims regarding the constitutionality of the *mens*

*rea* component of the Florida statute was not contrary to, or an unreasonable

application of, Federal law.

**Claim Five: Double Jeopardy**

Petitioner contends that his convictions violate double jeopardy because he was

convicted of two crimes that stemmed from a single act and the same quantum of

cocaine. Doc. 1.

Petitioner does not explain how the state court's rejection of this claim affords

him any basis for federal habeas relief. Under settled Florida law, convictions and

sentences for sale and possession of the same quantum of cocaine do not violate

double jeopardy because the greater offense of sale of a controlled substance does not

*necessarily* include possession. *State v. McCloud*, 577 So.2d 939, 941 (Fla. 1991). In

*McCloud*, the Florida Supreme Court upheld separate convictions and sentences for

possession and sale of the same quantum of cocaine, noting that "offenses are

separate if each offense requires proof of an element that the other does not, *without*

*regard to the accusatory pleading or the proof adduced at trial.*" *McCloud*, 577 So.2d at

941.

This test comports with the familiar federal "same-elements" or "Blockburger"

test.  *See United States v. Dixon*, 509 U.S. 688, 696 (1993) (citing *Blockburger v. United States*, 284 U.S. 299, 304 (1932)).  This test "inquires whether each offense contains an element not contained in the other; if not, they are the 'same offense' and double jeopardy bars additional punishment and successive prosecution."  *Dixon*, 509 U.S. at 696.  Although this court will decide under federal law whether a double jeopardy violation has occurred, it must accept a Florida courts' interpretation of that state's own statutes.  *Tarpley v. Dugger*, 841 F.2d 359, 364 (11th Cir.1988) (citing *Missouri v. Hunter*, 459 U.S. 359, 368 (1983).

In this case, the state courts' interpretation of its statutes comports with the federal constitutional standard.  Petitioner has failed to show that the state court's rejection of his double-jeopardy claim is contrary to, or an unreasonable application of, federal law.

## **Certificate of Appealability**

Section 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

Rule 11(a) also provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED:**

1. That the petition for writ of habeas corpus (Doc. 1) should be **DENIED**.

2. That a certificate of appealability should be **DENIED.**

**IN CHAMBERS** this 24ᵗʰ day of July 2013.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**